UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————————

Appeal No. 22-1980

———————————————

**LAN YAO**
Plaintiff-Appellant

v.

**OAKLAND UNIVERSITY**
Defendant-Appellee

———————————————

**APPELLANT'S BRIEF ON APPEAL**

———————————————

On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
No. 2:21-cv-10523
Honorable Stephen J. Murphy, III

———————————————

STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff-Appellant
Brian J. Farrar (P79404)
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

———————————————

**Oral Argument Requested**

## DISCLOSURE OF CORPORATE
## AFFILIATIONS AND FINANCIAL INTERESTS

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant makes the following disclosure:

1.  Are any of said parties a subsidiary or affiliate of a publicly owned corporation?

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, who has a financial interest in the outcome?

    No.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P. C.

By:   /s/ Brian J. Farrar
    Brian J. Farrar (P79404)
    Attorney for Plaintiff-Appellant
    33 Bloomfield Hills Pkwy., Ste. 250
    Bloomfield Hills, MI 48304
    (248) 644-1500

Dated:  September 8, 2023

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................... iii

JURISDICTIONAL STATEMENT ................................................ iv

STATEMENT OF ISSUES ........................................................... v

STATEMENT OF THE CASE ...................................................... 1

STATEMENT OF FACTS .......................................................... 2

    A.    The Parties ................................................................ 2
    B.    Dr. Yao's Employment at Oakland University ............... 4
    C.    OU's tenure review process ...................................... 8
    D.    Dr. Yao's tenure review .......................................... 12
    E.    Dr. Yao's white comparators ................................... 13
    F.    After denying Dr. Yao tenure, OU refuses to renew her
        contract .................................................................. 14
    G.    A reasonable jury could conclude OU did not treat Dr. Yao
        equally compared to white Assistant Nursing Professors in
        the tenure process ................................................... 15

SUMMARY OF ARGUMENT ..................................................... 18

ARGUMENT ......................................................................... 19

    I.     Standard of Review ................................................. 19
    II.    The District Court erred in concluding that Dr. Lao has not
        established a prima facie case ................................... 21
    III.   Dr. Yao can show pretext ........................................ 24
    IV.   Summary judgment is inappropriate for Dr. Yao's retaliation
        claim .................................................................... 31
    V.    At the very least, this Court should remand this case so that
        Dr. Yao has the opportunity to conduct additional discovery
        with the assistance of counsel .................................. 31

RELIEF REQUESTED .............................................................. 33

# TABLE OF AUTHORITIES

## Case Law

*Anderson v City of Bessemer City*, 470 US 564 (1985)..........................................20

*Anderson v Liberty Lobby, Inc*, 477 US 242 (1986) ....................................19, 20

*Arnett v Myers*, 281 F3d 552 (6th Cir 2002) ....................................................20

*Boswell v Mayer,* 169 F3d 384 (6th Cir 1999)..................................................22

*Clay v United Parcel Serv, Inc,* 501 F3d 695 (6th Cir 2007) ..............................24

*Dews v AB Dick Co*, 231 F3d 1016 (6th Cir 2000) ...........................................25

*Harris v Forklift Sys, Inc*, 510 US 17 (1993)....................................................20

*Huston v Tennessee State Bd of Regents,* 83 F3d 422 (6th Cir 1996) ....................30

*Jacklyn v Schering-Plough Healthcare Products Sales Corp*, 176 F3d 921
  (6th Cir 1999) ............................................................................................21

*McDonnell-Douglas v Green,* 411 US 792; 93 S Ct 1817 (1973)..........................21

*McNeil v US,* 508 US 106 (1980) ....................................................................33

*Pullman-Standard v Swint*, 456 US 273 (1982) ................................................20

*Reeves v Sanderson Plumbing Products, Inc*, 530 US 133; 120 S Ct 209 (2000)
 ........................................................................................................22, 24

*Reynolds-Bey v Harris*, 428 F Appx 493 (6th Cir 2011) ....................................22

*Riordan v Kempiners*, 831 F2d 690 (7th Cir 1987) ...........................................20

*Russo v City of Cincinnati*, 953 F2d 1036 (6th Cir 1992)...................................19

*Skrjanc v Great Lakes Power Serv Co,* 272 F3d 309 (6th Cir 2001) ....................24

*Texas Dept of Community Affairs v Burdine,* 450 US 248 (1983).........................24

*Tysinger Police Dep't of Zanesville*, 463 F3d 569 (6th Cir 2006) .........................19

*Wexler v White's Furniture, Inc,* 317 F3d 564 (6th Cir 2003).............................21

*Woythal v Tex-Tenn Corp,* 112 F3d 243 (6th Cir 1997) ....................................21

## Statutes, Court Rules, Misc.

42 USC 2000e-2(a)(1) ...................................................................................21

Fed R Civ P 56(d) ........................................................................................32

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Sixth Circuit Rule 34(a). This is a fact intensive employment discrimination and wrongful discharge case and since this case presents issues of significance to civil rights jurisprudence, plaintiff believes that oral argument would greatly assist the Court in reaching a fair and informed decision in this matter.

# JURISDICTIONAL STATEMENT

On March 8, 2021, Plaintiff-Appellant Lan Yao, PhD, commenced this action by filing a Complaint in the United States District Court for the Eastern District of Michigan (R 1, PageID 1). The complaint asserted that her former employer, Defendant-Appellee Oakland University had wrongfully terminated her and retaliated against her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e, *et seq. Id.*

The District Court had federal question jurisdiction under 28 USC 1331 because the claim action arose under the laws of the United States.

Appellate jurisdiction derives from 28 USC 1291 which permits appeal from the "final decisions of the district courts of the United States." The District Court disposed of this case by Opinion and Order Granting Motion for Summary Judgment, and Order Denying Motion for Reconsideration entered on September 26, 2022 (Opinion and Order, R 58, PageID 1100-1107; Order Denying Reconsideration, R 61, PageID 1188-1194).

This appeal was timely filed on October 21, 2022 (R 63, Notice of Appeal, PageID 1196).

## STATEMENT OF ISSUES

I.  Did the District Court err in granting summary judgment when questions of fact exist as to whether Defendant-Appellee denied Dr. Yao tenure and then terminated her due based on impermissible considerations such as her race or national origin?

II. Alternatively, should this Court, in the interests of justice, remand the case for further discovery related to Dr. Yao's civil rights claims in light of Dr. Yao's *pro se* status during the discovery phase of the district court proceedings?

Plaintiff-Appellant contends the answer to both questions is "Yes."

## STATEMENT OF THE CASE

This case is about how Oakland University ("OU") discriminated against Dr. Lan Yao – it's only non-white nursing professor -- and retaliated against her for filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). The crux of the matter revolves around OU's School of Nursing ("SON") Dean, who took a series of adverse employment actions against Lan Yao without providing any legitimate evidence of inadequate performance, and in doing so, failed to follow the procedures outlined in the Collective Bargaining Agreement ("CBA"). Viewing the evidence in the light most favorable to Plaintiff-Appellant, a reasonable jury could conclude that OU bent the rules to hide the Dean's discriminatory animus towards faculty members based on their race.

The Court erred in dismissing this case at summary judgment by holding that Dr. Yao could not make out a prima facie case of discrimination. The Court also erred when it resolved several questions of fact concerning Dr. Yao's academic performance in favor of Oakland University (the moving party).

Finally, during nearly all the proceedings at the district court, including during the critical summary judgment phase, Dr. Yao was proceeding *pro se*. As a result, the factual record has not been as fully developed as it could have been with assistance of counsel. The undersigned counsel was not involved in the

district court proceedings and has only been retained for purposes of assisting Dr. Yao during the Sixth Circuit mediation process, and now the appeal. The citations to the record in this brief are made based on counsel's and Dr. Yao's best understanding of the facts and reasonable inferences which can be drawn from the limited record on appeal. To the extent any factual gaps remain, Plaintiff-Appellant respectfully requests this Court, at a minimum, remand this matter for further discovery related to her civil rights claims.

Accordingly, Plaintiff-Appellant Lan Yao respectfully requests that this Court promptly rectify the improper dismissal of this case.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff-Appellant Lan Yao, PhD ("Dr. Yao") is an Asian, Chinese-born professor of Nursing. She obtained her undergraduate degree from Fudan University School of Nursing in Shanghai, China and her PhD from the University of Michigan in Ann Arbor. Over her career, she has taught a variety of classes including Evidence Based Nursing Practice, Nursing Research, Healthcare Quality, and has published in over 30 peer-reviewed journals.

Appellee-Defendant Oakland University is governed by eight Board of Trustee members who serve eight-year terms, appointed by the governor (source: https://oakland.edu/bot/). The Board oversees OU's financial and academic policies, practices, and meets its legal and fiduciary responsibilities

(see criteria set forth by the Higher Learning Commission, available at https://www.hlcommission.org/Policies/criteria-and-core-components.html) The Board delegates the University's day-to-day management to the administration and expects the faculty to oversee academic matters (*id*; https://oakland.edu/hlc-reaffirmation/criteria-for-hlc-accreditation/; R 36-2, PageID 449). A Collective Bargaining Agreement (CBA) between OU and the American Association of University Professors OU Chapter (AAUP/faculty union) outlines faculty employment terms and dispute resolution methods (CBA Preamble, R 36-2, PageID 449).

The Board appoints the President, who delegates operational responsibility to the President (source: https://oakland.edu/bot/). The President appoints the Provost, the Chief Academic Officer, responsible for Higher Learning Commission (HLC) accreditation, ethical conduct, and academic freedom (source: https://oakland.edu/provost/the-provost/).

Academic personnel actions are typically reviewed by faculty committees, deans, and the Senior Vice President for Academic Affairs and Provost, in order to provide faculty members with process and to promote uniformity in the decision-making process (R 45-3, PageID 796).

Judy Didion held the position of Dean of SON during Dr. Yao's employment (R 32, PgID 343). Currently Christopher Lance Coleman is the Dean (https://oakland.edu/nursing/directory/).

3

### B.    Dr. Yao's Employment at Oakland University.

OU hired Dr. Lan Yao in August 2015 as an Assistant Professor in its School of Nursing ("SON") (R 32, PageID 344). At the time of her hiring, the SON consisted of approximately 34 faculty members, 11 of which were tenured (available at: http://web.archive.org/web/20150110073309/http://www.oakland.edu/nursing/directory).

At all relevant times, all tenured faculty members in the SON were white (R1, PageID 7; R6, PageID 19).

Throughout her employment, Dr. Yao achieved significant success at OU, including multiple peer-reviewed published studies, as well as outside funding for her research. She always received excellent performance reviews from OU and many accolades by her peers during her employment prior to her tenure reviews. Further, Dr. Yao received strong support from four impartial external professional reviewers who reviewed her scholarship for tenure (Defendant's Initial Disclosures OAKLAND pp. 000274-000282)[1].

On the teaching front, the SON assigned Dr. Yao teaching different research courses that were critical to meeting the school's nursing program accreditation requirements (See Defendant's Initial Disclosures OAKLAND pp.

---

[1] It appears Dr. Yao never included OU's initial disclosures in the district court record. Upon request, Dr. Yao will provide copies to this Court.

000455-000465; see also accreditation requirements available at: https://www.aacnnursing.org/ccne-accreditation). The courses were offered in different format, face-to-face lectures, fully online or hybrid. See sample courses she developed (SON full professor SK's correspondence R 26-1, PageID 226-228) and multiple letters of support in Defendant's Initial Disclosures OAKLAND page #000455-000465). Dr. Yao was also assigned to teach the new RN-BSN and PhD in Nursing online courses after both were approved by OU BOT in June 2018 (see BOT meeting agendas and minutes archives https://oakland.edu/bot/). The effectiveness of Dr. Yao's teaching was positively recognized by both her peers and students. In addition, Dr. Yao served as a research advisor to numerous undergraduate and graduate students. Dr. Yao's leadership in teaching was evident in serving as the Faculty of Record and mentoring part-time faculty for the courses she taught at OU, her renovation and revision of existing courses to improve course structure and delivery to increase student engagement in learning, and developing new courses including Study Abroad in China, Nursing Informatics for Students in the new online RN-BSN program, and Quality of Healthcare for Doctoral Students in the new PhD in Nursing program to meet SON's curriculum needs (SON full professor SK's correspondence, R 26-1, PageID 226-228). Dr. Yao was a 2019 Teaching Excellence Award nominee, recognized by peers and students for her

exceptional teaching skills and leadership abilities (Defendant's Initial Disclosures OAKLAND p. 000603).

Since joining OU, Dr. Yao had successfully secured competitive internal and external funding to conduct her research in gerontological nursing at OU and interdisciplinary research with her OU Health Science, Medical School, and Department of Communication colleagues; both are substantial accomplishment for OU and SON as they align with and contribute to OU's mission and vision. They helped build OU SON's research capabilities and provided students with opportunities to learn. Some research outputs of Dr. Yao's (in the form of peer-reviewed publications and conference presentations) are documented in R 34-2, PageID 405-409, and in the Appendix E to Dr. Yao's tenure dossier List of Scholarship Accomplished at Oakland University, Defendant's Initial Disclosures OAKLAND pp. 000335-000342. Dr. Yao's work was frequently featured by OU in University magazines and media releases (see Defendant's Initial Disclosures OAKLAND pp. 000335-000342 for details).

A reasonable jury could also conclude that Dr. Yao was also one of the most productive faculty members on OU's Engineering-Nursing collaborative initiative, where she collaborated with Engineering faculty on National Science Foundation grant submissions as well as internal grant applications (see SON full professor SK's correspondence, R 26-1, PageID 230; and SON journal

editor's letter of support in Defendant's Initial Disclosures OAKLAND pp. 000331, 000377-000396, 000428-000432 for project details).

Dr. Yao's sustained active involvement and substantial achievement in scholarship/research and leadership providing service to the OU SON, the University, and the nursing profession, were substantiated by testimonies and evaluation letters about the impact, magnitude, duration of her service, etc., provided by persons involved in her service work, her grants and award letters related to the service, her services on annual University events as Planner, Moderator, Judge, and Reviewer utilizing her professional expertise and competence, such as Annual Graduate Research Conferences, Annual Interprofessional Education workshops on pain management and opioid abuse, Senate Teaching Excellence awards committees, and recognition and honors she received from national professional organizations (e.g., Outstanding Contributions in Review recognition from Geriatric Nursing, induction to the Gerontological Society of America as a Fellow). Evidence supporting her myriads of service accomplishments was included in her tenure dossier.

Oakland University was satisfied with Dr. Yao's performance and achievement. Dr. Yao's official OU faculty performance reviews, signed by the SON's Dean Judy Didion, for each year since she joined OU (2016-2017, 2017-2018, & 2018-2019) have not only met but consistently **exceeded** the Scholarship standards (see Defendant's Initial Disclosures OAKLAND pp. 000299-000301)

set forth in the School of Nursing Criteria/Standards and Procedures for Re-employment, Promotion and Tenure (R 47-2, PageID 850-81).

On August 7, 2017, OU re-appointed Dr. Yao and awarded her another two-year contract with tenure eligible on August 15, 2019 (R 41-1, PageID 746). Roughly a year later, on June 4, 2018, OU administrators recognized Dr. Yao as one of only nine nursing professors who were qualified to serve as the PhD program Core Faculty for Initial Dissertation Committees (OU Board of Trustee's June 4, 2018 general meeting, archive available at: https://www.oakland.edu/bot/). On July 25, 2018, OU President Ora Hirsch Pescovitz personally congratulated Dr. Yao for her induction as a Fellow of the Gerontological Society of America and her contribution to the University (Defendant's Initial Disclosures OAKLAND p. 000352).

### C.   OU's tenure review process.

Faculty at OU are evaluated based on three criteria: teaching, scholarship/research, and service to the university and the faculty's profession (R 47-2, PageID 851). Scholarship and research include both published articles in peer-reviewed journals as well as "successful efforts in securing competitive or professionally significant external funding …" (*Id*, PageID 852). When evaluating a faculty member's scholarship and research, OU looks to whether "authorities outside the institution, have critically evaluated the work as meeting

high standard (e.g., publications in refereed journals, ***grants and other funded research proposals***).” *Id* (emphasis added).

It is undisputed that tenure-track professor positions at OU are governed by the collective bargaining agreement (“CBA”) between OU and OU Chapter of the American Association of University Professors (“AAUP”/Union, “Association”).

The CBA relies upon the procedural standards set forth by the AAUP, as confirmed in the CBA at p. 35, para. 65, R 36-2, PageID 483, stating “principles of academic freedom and tenure” and “just cause” “shall be interpreted” in that “context” (R 45, PageID 774). The CBA requires that tenure-track professor’s contract cannot be non-renewed by OU without proper cause (*Id* at 456, 483). It stipulates that Oakland will “discharge a faculty member only for just cause” … and shall limited the cause to “Failure to fulfill professional responsibilities.” *Id.*

> If an evaluation request is made to FRPC, FRPC shall make a written report to Oakland and the faculty member involved within 30 days of the date on which the request was made. If FRPC fails to make its report within the thirty-day period, Oakland may proceed as if such report was timely made. Oakland shall then have the right to take any action with regard to the faculty member it determines to be in the best interest of the University. Any action taken by Oakland to impose penalties against a faculty member as a result of this evaluation procedure will be subject to the "just cause" standards of paragraph 65, the required notification of paragraph 66, and to the grievance procedure provided in this Agreement (ECF No. 36-2, PgID 484).

The CBA set forth the review criteria/standards (R 36-2, PageID 536-538) to evaluate faculty members' performance relative to the professional responsibilities (teaching, scholarship and public service) and form the basis of all recommendations and decisions regarding faculty reemployment, promotion, and tenure (R 1, PageID 3, ¶9; R 6, PageID 17, ¶9).

OU's CBA requires that tenure-track professor's contract cannot be non-renewed by OU without proper cause (*Id* at 456, 483). Additionally, CBA stipulates that Oakland will "discharge a faculty member only for just cause"… and shall limited the cause to "Failure to fulfill professional responsibilities." *Id.*

CBA Preamble states that the CBA is to protect faculty's entitled rights to fair and reasonable conditions of employment from violations by Oakland and its agents, and to methods of fair and peaceful adjustment of all disputes with Oakland and its agents that may arise in the course of their employment (R 36-2, PageID 449). OU's CBA requires that tenure-track professor's contract cannot be non-renewed by OU without proper cause (*Id* at 456, 483).

Because performance review is the reviewer's bona fide exercise of professional academic judgment and is susceptible to the bias or beliefs of the reviewer, the CBA outlines a multi-level and multi-stage review process for tenure candidates to ensure that OU's Dean and Provost do not make arbitrary decisions about faculty tenure. This diagram from OU Faculty Handbook outlines how the process is supposed to work:

10

Table 2. Basic Tenure Process at Oakland University:

*Information provided by the AAUP (2022)*

**Basic Tenure Process at Oakland University**

**C.1 Review (during the second year of the appointment)**
- Prepare the dossier and backup file according to unit instructions during the fall
- Unit votes on the case in time to forward it to the Dean's office by February 1
- Dean reviews the case (negative reviews will be forwarded to the appropriate CAP) with a recommendation forwarded to the Provost

**C.2 Review (during the fourth year of the appointment)**
- Prepare the dossier and backup file according to unit instructions during the fall
- Unit votes on the case in time to forward it to the Dean's office by February 1
- Appropriate CAP reviews the case by March 15 (negative reviews will be forwarded to FRPC)
- Dean reviews department and CAP reports and forwards the Dean's recommendation to the Provost

**C.4 Review (during the sixth year of the appointment)**
- Prepare the dossier and backup file according to unit instructions during the fall
- Unit votes on the case in time to forward it to the Dean's office by February 1
- Appropriate CAP reviews the case by March 15 and sends its report to FRPC
- If the decision is for tenure, promotion and tenure shall be effective August 15 of the review year

76

(OU Faculty Handbook p. 76). The multi-stage review process depicted in the diagram comprises the "c.1," "c.2," and "c.4" reviews, which are derived from the applicable subparagraphs of §41 of the CBA. Beginning with the academic unit review and concluding with the Provost, each review stage (c.1, c.2, or c.4) is a closed loop.

The "c.1 review" refers to the first re-employment for persons employed pursuant to Schedule 38b.(1). During the c.1 review, Oakland decides whether the faculty member will be re-employed for a second non-tenured term. The "c.2

review" refers to the second re-employment for persons employed pursuant to Schedule 38b.(1). Oakland determines whether the faculty member will be re-employed for a final non-tenured term and considered eligible for employment in a tenured position. (R 36-2, PageID 465. During the "c.4 review," Oakland reviews the faculty member to determine whether the faculty member will be re-employed and granted tenure. If the decision is to tenure, the tenure (and promotion, if applicable) shall be effective on August 15 of the calendar year in which the review occurred (*id*, PageID 467).

This system prevents unexpected negative performance ratings by the Dean and Provost. The goal is to protect each faculty from violation of Academic Freedom and unlawful discrimination at Oakland University. If a faculty member receives a negative c.1 review, it must be forwarded to the appropriate CAP (Committee on Appointment and Promotion) with a recommendation forwarded to the Provost before the Provost's independent review and final decision.

### D.    Dr. Yao's tenure review.

OU re-appointed Dr. Yao on August 7, 2017 following her c.2 review, and awarded her another two-year contract with tenure eligible on August 15, 2019 (R 41-1, PageID 746). The 2017 NCAP letter showed that 4 out of 5 members favored her reemployment and a future tenured position (R 47-3, PageID 885). The CBA contract further explains the process for an Assistant Professor's c.2

review in ¶41.c. (R 36-2, PageID 465). The c.2 review summary letter, written by the SON Dean Judy Didion on October 2, 2017, provided instructions to Dr. Yao and other nursing tenure candidates, emphasizing that OU's tenure requires faculty to conduct **actual** and **externally funded research** (see excerpt from Didion's c.2 letter in R 34-2, PageID 400-401).

Dean Didion's 2017 c.2 review letter rated Dr. Yao's scholarship and teaching as meeting the SON and university standards, and her service performance as exceeding the SON and university standards (R 45, PageID 777).

### E.   Dr. Yao's white comparators.

At summary judgment, Dr. Yao identified six Assistant Professors in the SON that she contests were comparators outside her protected class. This group includes Profs. Julie Kruse, Zorica Kauric-Klein, Anne Hranchook, Mary Golinski, Toni Glover, and Julia Paul. As set forth above, the record concerning these individuals is not fully developed given Dr. Yao's pro se status at the district court. For instance, none of these individuals was deposed, nor was any of the tenure committee members who reviewed their candidacies. Nevertheless, based on the record, Dr. Yao has resented evidence that when viewed as a whole, demonstrates that Dr. Yao's performance was as good or better than these six white comparators who were granted tenure (R 34-2; PageID 405-09).

13

Moreover, OU has put forth no evidence that these individuals had obtained the same amount of external funding as Dr. Yao had.

**F.    After denying Dr. Yao tenure, OU refuses to renew her contract.**

While Article VII of the CBA outlines the steps for promotion and tenure, Article IX establishes the procedures for discipline and discharge (R 36-2, PageID 456-475, 483-485). A tenure dossier is an important part of the evaluation process.

A tenure dossier is a compilation of documents pertinent to the faculty member's performance (R 36-2, PageID 467). It is initiated by the faculty member and/or their academic unit upon receiving a notification from Oakland on or before "December 1 of the year proceeding the final year of a faculty member's employment term" (*id*, 466-67).

Defendants argued at summary judgment that the tenure review process begins with CBA Article VII ¶41.c(4)(b) (*id*, 466-68). However, external professional reviews are an integral part of each professor's tenure dossier, as they eliminate all biases that internal reviewers may have.

A tenure dossier is continuously amended by each review entity outlined in the CBA (*id* 467-468), including the faculty member's objections during the review process to the subsequent review entity (41.a (5) (*id*, 462). Dr. Yao's partial tenure dossier, as released by OU through Defendant's Initial Disclosures, contains over 4,000 pages of original and secondary materials

related to her performance in the areas of Teaching, Scholarship, and Services that were evaluated, including Dean Didion's August 29, 2019, and May 1, 2020, letters on behalf of Oakland.

### G. A reasonable jury could conclude OU did not treat Dr. Yao equally compared to white Assistant Nursing Professors in the tenure process.

The documents reveal that the employment contract for an Assistant Professor is governed by CBA 38.(b). This provision offers some flexibility and lacks an end date of employment.

The multi-level review process articulated in CBA ¶41 (R 36-2, PageID 460-468 referring to the 5-level review starting from the academic unit and ending in Oakland). The definition of "Oakland" can be found in Article I and Article II (*id*, 449-450).

Level 1: faculty's academic unit review;

Level 2: unit chairperson review;

Level 3: CAP (college Committee on Appointment and Promotion) review;

Level 4: FRPC (university-level Faculty Re-employment and Promotion Committee) review;

Level 5: Oakland's administrative agents/Dean and OU Chief Academic Officer and Provost reviews.

However, OU failed to follow the c.4 process in Dr. Yao and the six white nursing tenure comparators' c.4 tenure reviews in 2019 and 2020. Here, the Dean of SON and OU implemented a 3-level review (rather than the full 5-level review), which consisted of only: (1) NCAP; (2) FRPC; and (3) Dean Didion being the final decision-maker concerning tenure (Dean Didion August 29, 2019 letter, R 47-10, PageID 924; Dean Didion May 1, 2020 letter, R 47-15, PageID 960). The NCAP was hand-picked by Dean Didion, in violation of the CBA provision that committee members shall be elected by faculty and serve "for three-year staggered terms commencing August 15, with elections conducted during the preceding winter semester. A majority of CAP members shall be tenured. Election results shall be submitted to the Association in writing" (CBA ¶41.e., R 36-2, PageID 469). Dean Didion had multiple roles during faculty's c.4 review process, including the chairperson (note that the SON has no unit or department, nor unit or department chairperson), the School of Nursing Dean, the non-voting member on the NCAP, and the designated tenure decider by Oakland.

As a result, a reasonable jury could infer that Dean Didion allowed personal bias to manipulate the tenure outcome in a way that would not have been possible had OU implemented the required 5-level review process described in the CBA in Dr. Yao's case (R 36-2, PageID 460).

For example, in the 3-level review process, the Dean can exercise much greater control over the outcome of the NCAP process in her role as Dean and the non-voting member on the NCAP. Importantly, the FRPC letter can be ignored if the outcome was not what the Dean wanted because all recommendations from Level 1-4 reviews (see multi-level review process described above) are advisory (see generally CBA ARTICLE VI, ARTICLE VII, ARTICLE IX; PageID 456, 460, 483; and the cross-check example in R 34-2, PageID 391). In the case of white comparator Zorica Kauric-Klein, in which the university-level faculty committee FRPC unanimously recommended against her tenure, the FRPC letters were ignored.

OU has acknowledged in its court filing that the Provost oversees a professor's tenure dossier review (R 47, PageID 825). However, there is no evidence that the Provost and President, or the Board, took the time to review the credibility or accuracy of Dean Didion's tenure recommendations in Dr. Yao's case and thus, failed to fulfill their OU job responsibilities and fiduciary duties.

At summary judgment, the district court found that Dr. Yao's single peer-reviewed publication justified her denial of tenure. However, the number of peer-reviewed publications is just one of three indicators for assessing scholarship and research, as articulated in OU's CBA (R 47-2, PageID 852-57).

Also of critical importance are competitive research grants (*id*, 827). The Blue Cross Blue Shield Michigan Foundation funded grant, where Dr. Yao was the Principal Investigator, was the sole externally funded faculty research originating from OU's SON during that period (OU Research Office FY 2015-2019 report, available at: https://oakland.edu/research/). This grant was deemed significant by OU (available at: https://oakland.edu/nursing/news/2017/ou-nursing-professors-earn-grant-to-develop-fall-prevention-program-for-older-arab-americans) and by Dean Didion in her report to the Oakland University Board of Trustees. In fact, Dean Didion listed Dr. Yao as one of the eight nursing professors who are qualified to serve on PhD students' initial dissertation committee (see Dean's report about SON's faculty qualifications and resources for the new PhD in Nursing program she proposed to OU BOT in the archived June 4, 2018 BOT meeting agendas and minutes available at: https://oakland.edu/bot/). However, shortly after she identified Dr. Yao as a much-needed nursing professor for OU, Dean Didion falsely stated that Dr. Yao's scholarship does not meet OU's standard and requirement.

## SUMMARY OF ARGUMENT

The district court incorrectly concluded that Dr. Yao could not establish a prima facie case of discrimination and granted OU's motion for summary judgment. Viewing the evidence in a light most favorable to Dr. Yao, questions

of fact exist as to whether Dr. Yao's performance and overall qualifications were the same of better than those of her comparators outside the protected class. While Dr. Yao's peer review identified some areas of improvement, the same is true for Dr. Yao's white comparators who were instead given tenure. For example, the committee found that Dr. Julie Kruse, a white Assistant Professor of Nursing, had no focused area of research and no peer-reviewed publications and no empirically-based presentations at Oakland University (R 22, PageID 132-138).

The District Court also erred by not considering how procedural abnormalities in the tenure process for Dr. Yao could be viewed by a jury as evidence of discrimination.

## ARGUMENT

### I. Standard of Review.

This Court reviews an order granting summary judgment de novo. *Tysinger Police Dep't of Zanesville*, 463 F3d 569, 572 (6th Cir 2006).

In assessing whether summary judgment is appropriate, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Anderson v Liberty Lobby, Inc,* 477 US 242, 251-52 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Russo v City of Cincinnati*, 953 F2d 1036, 1042 (6th Cir 1992).

19

When evaluating discrimination claims, the court must consider the totality of the evidence. *Harris v Forklift Sys, Inc*, 510 US 17, 23 (1993). Discriminatory intent is a "pure question of fact." *Pullman-Standard v Swint*, 456 US 273, 287-88 (1982). The reason for creating this low standard is because:

> [p]roof of . . . discrimination is always difficult. Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it …

*Riordan v Kempiners*, 831 F2d 690, 697-98 (7th Cir 1987).

In *Anderson v City of Bessemer City*, 470 US 564 (1985), the United States Supreme Court addressed the standard of review for factual findings made by the district court in Title VII employment discrimination cases and held that, a finding of fact is clearly erroneous if it is not supported by substantial evidence, if it is based on an erroneous view of the law, or if the reviewing court is left with a firm conviction that a mistake has been made.

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.*, if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc*, 477 US 242, 248; 106 S Ct 2505(1986), and "… is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Arnett v Myers*, 281 F3d 552, 561 (6th Cir 2002). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is

20

ruling on a motion for summary judgment or for a directed verdict." *Wexler v White's Furniture, Inc,* 317 F3d 564, 573 (6th Cir 2003).

## II.    The District Court erred in concluding that Dr. Lao has not established a prima facie case.

Title VII prohibits discrimination due to race, national origin, or gender (including pregnancy) in the "terms" or "conditions" of employment. 42 USC 2000e-2(a)(1). Because direct or "smoking gun" evidence is rarely available to a plaintiff bringing a discrimination claim, a plaintiff must typically prove her claims inferentially, through the use of indirect or circumstantial evidence. *See Woythal v Tex-Tenn Corp,* 112 F3d 243, 246 (6th Cir 1997). A plaintiff can do so under the burden-shifting framework first set forth in *McDonnell-Douglas v Green,* 411 US 792, 802-805; 93 S Ct 1817 (1973).

Under that analysis, a plaintiff establishes a prima facie case with evidence that she: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position; and (4) either was replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees. *Russell v Univ of Toledo,* 537 F3d 596, 604 (6th Cir 2008)

Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Jacklyn v Schering-Plough Healthcare Products Sales Corp,* 176 F3d 921, 931 (6th Cir 1999). If the defendant is able to do so, the burden

then shifts back to the plaintiff to show that the defendant's preferred reason is not the true reason, but merely a pretext for discrimination. *Id* at 392.

A prima facie case, combined with sufficient evidence that the employer's asserted justification is false, permits a fact finder to conclude that the employer unlawfully discriminated. *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133 (2000).

At summary judgment, the District Court correctly found that Dr. Yao has satisfied the first three elements of a prima facie case: she is a member of a protected class (Asian, Chinese born); she suffered an adverse employment action (denied tenure and terminated); and she was qualified for her position (R 58, PageID 1104). However, the District Court concluded that Dr. Yao cannot satisfy the fourth and final prong. *Id.*

As an initial matter, it is well-settled that a court must "liberally construe" *pro se* court filings and it is not clear that District Court did that in Dr. Yao's case. See *Reynolds-Bey v Harris*, 428 F Appx 493, 498 (6th Cir 2011); *Boswell v Mayer,* 169 F3d 384, 387 (6th Cir 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). Nothing in the summary judgment decision suggests that the Court applied this more liberal standard when construing Dr. Yao's arguments. Moreover, without the benefit of depositions, the full extent to which Dr. Yao's research and qualifications compares to her white counterparts has not been fully developed. However, even

with the limited record on appeal, Dr. Yao has set forth enough evidence to establish a prima facie case.

For example, Julie Kruse, an Associate Professor hired under CBA 38.(c), had her record criticized for lack of focused research and absence of peer-reviewed publications since joining OU by her External Impartial Professional Reviewers (R 22, PageID 132-38). The FRPC review also appears to have pointed out some procedural anomalies in the selection of non-impartial external evaluators for Kruse, a violation of OU's tenure and Nursing CAP Procedures (R 47-2, PageID 876). This violation was ignored by Dean Didion and Defendant OU (R 54-1, PageID 1060; R 60, PageID 1127-28).

In sum, a comparison of Dr. Yao's committee reviews and those of Dr. Kruse, show that while both had room for improvement in certain areas, Dr. Yao was denied tenure and Dr. Kruse was not. Secondly, even based on the very limited record on appeal, Dr. Yao has presented evidence that her scholarship – when viewed as a whole – was superior to those of her white comparators. For instance, while Dr. Kruse may have had more scholarly referred articles as noted by the District Court in its summary judgment decision, there is no evidence that Dr. Kruse works-in-progress or external research grants were anywhere close to the same level as Dr. Yao.

While OU argues that it did not renew Dr. Yao's contract or offer her tenure because she had only one peer reviewed publication, it ignored the fact

that publications are but one factor considered when evaluating a faculty member's scholarship. OU is also supposed to consider grants and scholarly works-in-progress.

All of these factors taken together, including the fact that Dr. Yao appears to have been the only non-White professor in the SON and the only one not to have achieved tenure, meet the relatively low burden for establishing a prima facie case. See *Clay v United Parcel Serv, Inc,* 501 F3d 695, 703 (6th Cir 2007) ("[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.").

## III.    Dr. Yao can show pretext.

Once Dr. Yao has presented enough evidence to establish a prima facie case, the burden shifts to OU to proffer a legitimate, nondiscriminatory rationale for discharging the employee *Skrjanc v Great Lakes Power Serv Co,* 272 F3d 309, 313-16 (6th Cir 2001).

If the employer does so, the burden shifts to the plaintiff to present evidence the employer's articulated reason is pretextual. *Texas Dept of Community Affairs v Burdine,* 450 US 248, 252-53 (1983); *Reeves,* 530 US at 135 (a prima facie case, combined with sufficient evidence that the employer's asserted justification

is false, permits a fact finder to conclude that the employer unlawfully discriminated against the employee).

A plaintiff may establish pretext in three ways: by showing 1) that the employer's explanation has no basis in fact; 2) that if the reason had a basis in fact, it was not the actual reason motivating the decision; or 3) that if the reason was a motivating factor, it was insufficient to justify the decision. *Dews v AB Dick Co,* 231 F3d 1016, 1021 (6th Cir 2000).

Alternatively, there exists additional, compelling evidence from which a jury could infer race or national origin discrimination against Dr. Lao, the only non-Caucasian professor in the School of Nursing.

Questions of fact arise concerning the procedure used to evaluate Dr. Yao's performance compared to those of other faculty in the School of Nursing. Given the fact that Dr. Yao's scholarship was as good or better than that of her white comparators, a reasonable jury could conclude that OU's reasons for denying Dr. Yao tenure, and subsequently firing her, have no basis in fact or did not actually motivate the decision.

Moreover, a reasonable jury could conclude that Dean Didion's May 1, 2020 letter is evidence of her discriminatory animus towards Dr. Yao, because the Dean used different standards when counting the seven nursing candidates' number of publications. (R 47-15, PageID 959-961), Dean Didion Dean wrote:

"On November 27, 2019, the Nursing Committee on Appointment and Promotion (NCAP).... found that you had only one peer-reviewed publication **in your identified area of research**" (emphasis added).

"It is also of note that the SON Criteria emphasize **research while done at the University** and since joining in 2015 you have only one peer-reviewed publication." Def. Didion May 1, 2020 letter, ECF No. 47-15, PgID 960.

(Emphasis added to show Didion used different criteria to count the number of publications directed only at the plaintiff (based on her race, discriminatory and disparate treatment).

OU has also represented in its court filings that faculty tenure decisions are exclusively made by the members of Board of Trustees (BOT), not the Dean or Provost (R 38, PageID 684). This apparent inconsistency could lead a jury to further infer discriminatory intent. Moreover, OU claims that that the BOT rereviewed Dr. Yao's tenure records at its April 6, 2020 meeting and notified Dr. Yao of its decision the same day (R 47-13, PageID 935-935; R 47-14, PageID 957). In reality, the BOT meeting lasted one and half hours over WebEx and purportedly reviewed over 100 faculty members on the Personnel Recommendation list submitted by Provost Lentini (R 47-13, PgID 935; R 45-4, PageID 809). A reasonable jury could infer that the BOT could not possibly have had sufficient time to review all of those faculty members' criteria so as to meet its obligations under the accreditation guidelines and the CBA.

Furthermore, the second document that OU asserts was a "tenure denial" notice, was actually a second non-renewal notice waived by the CBA paragraph

41.c.4.(e)(2)c. Despite the CBA paragraph 41 requiring the University to provide the results of its tenure re-review by April 15, 2020, it has not done so (R 36-2, PgID 468). In addition, the Dean of School of Nursing Judy Didion made a Human Resource Personnel Action order on August 3, 2020 under her pretext, "contract will expire on August 14, 2020," (Defendant Initial Disclosures 000108-000110). While OU claims Dr. Yao's term expired which caused her termination, there is no evidence that that term even applies to OU's tenure-track Assistant Professors. Of significant importance is that fact that the Dean did not check the box, "discharged" or wrote "Discharge at the end of her current contract," but checked the box "Term Expired." Should the Dean have any valid evidence to support her accusation that Dr. Yao had inadequate performance, a reasonable jury could infer that the Dean would have checked the "discharged" box instead. This raises a triable question of fact as to whether the Dean knew her proffered reason, "contract will expire on August 14, 2020" for terminating Yao, was not her true reason for terminating Dr. Yao's employment.

There are also questions of fact as to whether OU management had investigated Dr. Yao's performance to determine whether it was, in fact, deficient, as required in the CBA ¶ 67, which mandates that the management take appropriate actions before instituting any disciplinary or discharge action against the faculty member (R 36-2, PageID 484).

Dean Didion's assessment of Dr. Yao contradicts impartial external evaluators' conclusions, who noted Dr. Yao's impressive and meritorious scholarship accomplishment, substantial progress as a scholar, and leadership in her field of expertise. A reasonable jury could conclude that Dean Didion's review was biased.

The Dean stated in her letter dated May 1, 2020 that:

"Your record of actual accomplishment in the area of scholarship falls well short of expectations. For promotion and granting of tenure at the c.4 level, there must be unequivocal evidence in the record of the requisite accomplishment. The dossier must make a persuasive case for promotion and tenure, and unfortunately, yours did not. Accordingly, you were not recommended for re-employment."

(R 47-15, PageID 961).

It is crucial to emphasize that peer-reviewed publication is just one of three indicators for assessing nursing scholarship and research. None of Dr. Yao's impartial external reviewers found her publication record to be deficient. In contrast, external evaluators noted deficiencies in Dr. Julie Kruse's record, yet Dr. Kruse was granted tenure, which suggest evidence of disparate treatment (R 22, PageID 132-38).

The hallmark of academic success is for the academician to establish a focused area of research, and bring light to that focus through Scholarship, Teaching and Service. The false claim that Dr. Yao had only one peer-reviewed publication, contradicted by External Impartial Professional Reviewers,

demonstrates discrimination. Dean Judy Didion's selective criteria and manipulation of the Nursing CAP is further evidence by which a jury could infer discriminatory intent. Moreover, Dr. Yao submits that Dean Didion's review contravenes the accepted professional norms in the nursing profession and contravened the CBA, which could be further developed should this Court remand this matter for further discovery.

Dean Didion's assessment also ignored the NCAP review finding that "Dr. Yao presented evidence of a record of securing internal/external funding for scholarly activities and showed a record of presenting empirically based papers and/or posters at conferences" in the NCAP letter dated November 27, 2019 R 36-10, PageID 636). The Dean's review also disregarded the significance of funded research proposals and empirically-based conference presentations reporting research conducted at Oakland University, which directly contradicted her directives to all nursing faculty members (see cross-examination and screenshots of Dean Didion's letter regarding OU's requirement for receiving tenure R 34-2, PageID 400-401).

Being the only nursing professor who had obtained a coveted grant from Blue Cross Blue Shield is strong evidence by which a reasonable jury could conclude that Dr. Yao's scholarship for tenure clearly outperformed the other six white nursing candidates who were granted tenure by Dean Didion shortly after she denied Dr. Yao. Furthermore, Dean Didion and OU did not apply the

same criteria and method to count the number of publications for the six white direct comparators, but misapplied the Nursing CAP in violation of the procedures set forth by the CBA and Nursing CAP Procedures (R 47-2, PageID 876). "Certainly the fact that an employer has failed to follow internal guidelines may be evidence that a proffered explanation is a mere pretext." *Huston v Tennessee State Bd of Regents*, 83 F3d 422 (6th Cir 1996).

Finally, in response to a request from the U.S. Equal Employment Opportunity Commission concerning her Charge of Discrimination, Dr. Yao submitted additional evidence supporting her claims of discrimination (EEOC documents, Appendix ###). Given Dr. Yao's *pro se* status, these documents were never part of the district court record, or converted to a declaration. Nevertheless, in the interests of justice, Dr. Yao respectfully requests this Court consider them as further evidence of discrimination.

In sum, the evidence presented creates a triable issue of fact as to whether OU's actions in not following the CBA and Nursing CAP procedures for Dr. Yao, but not for her white comparators, is evidence of discrimination. Accordingly, the district court's dismissal at summary judgment should be reversed.

**IV.    Summary judgment is inappropriate for Dr. Yao's retaliation claim.**

It is undisputed that Dr. Yao engaged in protected activity when she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission in May 2020. The district court concluded that Dr. Yao's retaliation claim could not go forward based on a finding by the court that because OU notified Plaintiff in August 2019 and April 2020 that her employment would end in August 2020, Dr. Yao cannot show that her EEOC charge caused her termination. However, it appears that the second notice to Dr. Yao in April 2020 occurred before the completion of her re-review. Thus, a reasonable jury could conclude that the decision had not been finalized as to her continued employment. In other words, the decision not to tenure Dr. Yao predated OU's allegedly objective re-review process.

**V.    At the very least, this Court should remand this case so that Dr. Yao has the opportunity to conduct additional discovery with the assistance of counsel.**

Dr. Yao would have most certainly benefited from representation by counsel during the court proceeding, especially during the discovery and summary judgment phases. Some specific and tailored discovery would help Dr. Yao present her arguments in a more concise manner. If given the opportunity, here is evidence missing from the record that could be obtained should this Court remand this case:

- Deposition of Dean Didion to determine how a professor's external research grants are weighted against scholarly publications and whether she has granted tenure to any other candidates who received critical reviews from FRPC or NCAP.

- Depositions of faculty members who sat on Dr. Yao's review committees to better understand what criteria they used to evaluate Dr. Yao and whether they are aware of any other candidates with Dr. Yao's overall qualifications who were denied tenure.

- Deposition of OU's tenure deciders, the President and eight Board members, to further understand Dr. Julie Kruse's, Dr. Zorica Kauric-Klein's Dr. Dr. Anne Hranchook's, Dr. Mary Golinski's, Dr. Julia Paul's, and Dr. Toni Glover's qualifications and why each of them was granted tenure.

- Deposition of a 30(b)(6) witness from OU to demonstrate that FRPC and NCAP committees play only an advisory role and can be a cover for discrimination.

This additional discovery, if granted, would also permit Dr. Yao to raise even more questions of fact as to whether OU unlawfully terminated Dr. Yao's employment and wrongfully denied her tenure.

To the extent OU argues in its opposition brief that Dr. Yao waived the right to seek additional discovery by not filing a Rule 56(d) affidavit, Appellant points out that she did, in response to OU's motion to summary judgment, file a motion to extend the discovery schedule (R 48). The district court denied that request because Dr. Yao apparently sent her discovery requests too close to the discovery cutoff (R 52, PageID 1012). However, broadly and liberally construing Dr. Yao's filing, as the court must for *pro se* litigants, Dr. Yao's request should have been considered in the context of a response under Rule 56(d), rather than

an extension of discovery. See generally *McNeil v US,* 508 US 106, 113 (1980) ("rules of procedure are based on the assumption that litigation is normally conducted by lawyers").

## RELIEF REQUESTED

For the reasons set forth herein, Plaintiff-Appellant respectfully requests this Court reverse the summary judgment dismissal of this matter and remand for trial. Alternatively, Plaintiff-Appellant respectfully requests this Court remand this matter for further discovery in the interests of justice.

**PROOF OF SERVICE**

On September 8, 2023, I filed this document with the Clerk of the Court via the Court's electronic filing system, which will provide notice to all counsel of record.

/s/Brian J. Farrar
Brian J. Farrar (P79404)
Attorney for Plaintiff-Appellant
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
bfarrar@sterlingattorneys.com

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.

By:    /s/Brian J. Farrar
Brian J. Farrar (P79404)
Attorney for Plaintiff-Appellant
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation provided in Fed R App P 32 (a)(7)(B) because it contains 7134 total words in Calisto MT (14 point) proportional type. The word processing software used to prepare this Brief is Microsoft Word 2016.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P. C.

By:___/s/Brian J. Farrar_____
        Brian J. Farrar (P79404)
        Attorney for Plaintiff-Appellant
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500

Dated: September 8, 2023

**DESIGNATION OF RECORD**

| Doc. Entry No. | Description of Doc. | Page ID Range |
|---|---|---|
|  |  |  |
| R 1 | Complaint | 1-9 |
| R6 | Answer to Complaint & Affirmative Defenses | 16-23 |
| R 22 | Notice of Self-Representation and Pleadings | 120-138 |
| R 26-1 | SON full professor SK's correspondence | 219-230 |
| R 32 | Answer to Amended Complaint and Affirmative Defenses | 342-351 |
| R 34-2 | Plaintiff's Initial Disclosures | 391-413 |
| R 36-2 | Collective Bargaining Agreement | 445-563 |
| R 36-10 | NCAP letter dated November 27, 2019 | 633-638 |
| R 38 | Def's Resp to Plaintiff's Mtn to Strike | 677-686 |
| R 41-1 | Ex 1-Counter Evidence | 746-748 |
| R 45 | Supplemental Brief | 773-779 |
| R 45-3 | University Personnel Actions | 796-804 |
| R 45-4 | University Personnel Actions | 805-810 |
| R 47 | Def's Mtn for Dismissal | 816-847 |
| R 47-2 | SON Criteria | 849-881 |
| R 47-3 | 2017 NCAP letter | 882-885 |
| R 47-10 | Dean Didion August 29, 2019 letter | 923-924 |
| R 47-13 | OU Board of Trustee Minutes, 04/6/2020 | 934-955 |
| R 47-15 | Dean Didion May 1, 2020 letter | 958-961 |
| R 48 | Plaintiff's Motion to Extend Deadline | 965-966 |
| R 52 | ORDER Denying Motion to Extend Dispositive Motions Deadline; and Requiring Plaintiff to Respond to Motion to Dismiss, or Alternatively, for Summary Judgment | 1011-1013 |

| Doc. Entry No. | Description of Doc. | Page ID Range |
|---|---|---|
| R 54-1 | Ex 1-Resp to Motion to Dismiss | 1055-1061 |
| R 58 | Opinion and Order | 1100-1107 |
| R 60 | Plaintiff's Motion for Reconsideration | 1109-1132 |
| R 61 | Order Denying Reconsideration | 1188-1194 |
| R 63 | Notice of Appeal | 1196 |
| | | |