UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

Appeal No. 22-1980
_____

**LAN YAO**
Plaintiff-Appellant

v.

**OAKLAND UNIVERSITY**
Defendant-Appellee
_____

**APPELLANT'S REPLY BRIEF ON APPEAL**
_____

On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
No. 2:21-cv-10523
Honorable Stephen J. Murphy, III

_____

STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff-Appellant
Brian J. Farrar (P79404)
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

_____

**Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 1

    I.    Dr. Yao has established a prima facie case .................................. 1

    II.   Dr. Yao has evidence of pretext ..................................................... 8

    III.  Questions of fact remain for Dr. Yao's retaliation claim ............. 11

    IV.  The interests of justice warrant a remand for, at minimum, further factual development ....................................................... 12

# TABLE OF AUTHORITIES

**Case Law**

*Burlington Indus, Inc v Ellerth*, 524 US 742 (1998) .............................................. 7
*Chen v Dow Chem. Co,* 580 F3d 394 (6th Cir 2009) ........................................... 10
*EEOC v Yenkin-Majestic Paint Corp*, 112 F3d 831 (6th Cir 1997) ......................... 9
*Jackson v FedEx Corp Servs, Inc*, 518 F3d 388 (6th Cir 2008) ............................... 8

## INTRODUCTION

Defendant-Appellee Oakland University ("OU") wants to have it both ways. On the one hand, OU hides behind the alleged impartiality of its candidate review committees (the NCAP and FRPC) to defend its decision to deny tenure and subsequently terminate its only non-white faculty member in the School of Nursing. On the other hand, OU acknowledges that its administration will override a negative review by one of these committees and award tenure when it suits it – just as OU did in the case of Dr. Zorica Kauric-Klein.

Since a reasonable jury could conclude that Dr. Yao's performance — when evaluated by applying the performance standards to the NCAP, FRPC, and evaluated by applying the performance standards to the NCAP, FRPC, and adhere to Nursing professional norms, as reflected by the four external impartial professional evaluation letters – is comparable or superior to that of her white comparators, the denial letters authored by Dean Didion, which misrepresent Dr. Yao's performance, make summary judgment inappropriate.

## ARGUMENT

**I.     Dr. Yao has established a prima facie case.**

In its response brief, OU does not challenge that Dr. Yao has established the first three prongs of a prima facie case (she is a member of a protected class; was qualified for her job; and suffered an adverse employment decision). OU argues that Dr. Yao cannot satisfy the fourth and final prong because her white

3

comparators who received tenure had more refereed journal articles and presentations. However, OU fails to rebut Dr. Yao's argument that the number of refereed publications is but one factor to be considered when evaluating a tenure candidate's overall scholarship, and OU SON's primary consideration for scholarship is emphasized as "funded or unfunded research, "as pointed out by candidate's external impartial professional evaluator (R 22, PageID 138).

In its response brief, OU even acknowledges that Dr. Yao's impressive research grant "is a good thing," but argues Dr. Yao failed to produce "research that is of sufficiently high quality to achieve publication in refereed journals" (Appellee brief, p 34). However, Dr. Yao had obtained four external, impartial professional evaluations which stated her scholarship met high standards and "contributed to the creation of new knowledge in her scholarly area" per the SON scholarship standards (R 34, PageID 370). At the very least, there is a question of fact as to whether Dr. Yao's scholarship met OU's standards and was equal or better than those of her comparators. In other words, while OU wants to make this all about publications, it cannot ignore the fact that faculty scholarship is evaluated on more than just publications.

Moreover, all four of these evaluators recognized Dr. Yao's progress in her role as a scholar and her leadership in her specific field of expertise. These types of external impartial professional evaluations, chosen by OU to align with

4

accepted Nursing professional norms, are an integral part of each professor's tenure dossier (R 27, PageID 21).

OU's presentation of the facts concerning the internal faculty committees that evaluated Dr. Yao is misleading. In the Conclusion section of its brief, OU contends that "26 (out of 29) faculty members from the plaintiff's own bargaining unit determined she was not entitled to tenure" (Appellee Br, p 43). That is not accurate. The School of Nursing Committee on Appointment and Promotion (NCAP) contains five (three tenured and two non-tenured) nursing faculty (R 36-3, PageID 589). The university-level FRPC (Faculty Reappointment and Promotion Committee) consists of 11 tenured faculty members (see Defendant's Motion to Dismiss, R 36, PageID 431). Thus, OU's numerical presentation is unjustifiably flawed because it combines votes from the Nursing college CAP (NCAP) and the university-level FRPC, leading to a misleading aggregation of committee decisions.

Additionally, OU exaggerates the faculty count by almost doubling the actual number of NCAP and FRPC members involved in the 2019 and 2020 committees, since these committees were comprised of mostly the same people.

Moreover, both NCAP and FRPC lack the expertise to make subjective judgments about a candidate's scholarly progress in specific research areas, which is why the Provost gets involved in the process, as he did in Dr. Kauric-Klein's case.

5

Turning to the specific comparators, without citing any evidence of what Dr. Kauric-Klein allegedly submitted in her defense, OU acknowledges in its brief that Dr. Kauric-Klein "provided additional information" to the Provost's office which resulted in her being granted tenure. By showing that, in at least one instance, OU has overridden the recommendations of its allegedly impartial committees, Dr. Yao has created a question of fact as to whether OU's claim that it just followed the committee's recommendation in her case is accurate. Even based on the limited record at hand, a reasonable jury could infer that OU ignored established review standards and instead deferred to the Dean, who is a NCAP member and used the NCAP review to justify Dr. Yao's tenure denial. This was particularly evident in the instance of overriding the FRPC's favorable assessment of Dr. Yao's Service performance, suggesting discriminatory practices. In other words, a reasonable jury could reject OU's argument that Dr. Yao was denied tenure solely because of the negative committee recommendations.

Additionally, since OU admits the Provost's office overrode Dr. Kauric-Klein's negative recommendation from the committee based on its evaluation of her record, it undermines OU's other argument that Provost Lentini was not a decision-maker in Dr. Yao's case.

Moreover, OU appears to argue that even if Dean Didion and Provost Lentini discriminated against Dr. Yao, they cannot be held liable because the

6

district court dismissed them as individual defendants. Whether they are individual defendants or not, their actions can nonetheless be imputed to OU under Title VII. *Burlington Indus, Inc v Ellerth*, 524 US 742, 754 (1998) ("Congress has directed federal courts to interpret Title VII based on agency principles").

OU portrays its tenure review process as involving all parties except for Dean Didion (the NCAP, the FRPC, the Provost, the President, and the University's Board of Trustees). Questions of the accuracy of OU's presentation remain as to Dean Didion's actual role in the process in light of the fact that Dr. Yao's official tenure denial letters are written and signed by the Dean. There appears to be a discrepancy in OU's position regarding the SON Dean's role as the sole decision-maker for nursing faculty tenure in R 6 ¶25 (PageID 19), while asserting that the Dean was not involved in the tenure process.

Turning to Dr. Yao's other comparator, Dr. Julie Kruse, OU's response brief includes a table purporting to show that Dr. Kruse had more published works that Dr. Yao, but cites nothing in the record to support that. Moreover, OU fails to explain why her review found that Dr. Kruse had no focused area of research, no peer-reviewed publications, and no empirically-based presentations at OU (R 22, PageID 132-138). Dr. Kruse's external professional evaluations also noted that her publication did not demonstrate a contribution to the creation of new knowledge or the expansion of an established scholarly area (*id*, PageID 133). Moreover, OU SON's primary consideration for scholarship is

7

emphasized as "funded or unfunded research," as pointed out by the third external impartial professional evaluator (*id*, PageID 138). The evidence from external professional evaluations (*id*, PageID 132-138), which represents the accepted Nursing professional norms, contradicts OU's position that Dr. Kruse's scholarship was somehow superior to Dr. Yao's. Since Dr. Yao was the only non-white faculty member in the School of Nursing and has presented some evidence that her total job performance was equivalent to or better than others outside her protected class who received tenure, Dr. Yao has met the relatively low burden of establishing a prima facie case. See *Jackson v FedEx Corp Servs, Inc*, 518 F3d 388, 396 (6th Cir 2008) (under Title VII, an employee need not produce a "significant amount of evidence in order to establish a *prima facie case*").

## II.  Dr. Yao has evidence of pretext.

In its response brief, OU fails to rebut Dr. Yao's argument that the timing of the decision from OU's Board of Trustees (BOT), which purportedly reevaluated Dr. Yao's tenure records at its April meeting, is suspicious and could be viewed as pretextual.

In its response brief, OU once again acknowledges that the BOT met and informed Dr. Yao of its decision on the same day. However, as explained in Dr. Yao's original brief, a reasonable jury could find this claim to be implausible given the fact that the BOT meeting lasted one and a half hours over WebEx and the trustees were tasked with reviewing over 100 faculty members on the

8

Personnel Recommendation list submitted by Provost Lentini (R 47-13, PageID 935; R 45-4, PageID 809). A reasonable jury could find it implausible and unlikely that the BOT could have had sufficient time to review all of those faculty members' criteria to therefore meet its obligations under accreditation guidelines and the CBA. This is yet another question of fact Dr. Yao has raised concerning whether the CBA was properly followed in her case. See *EEOC v Yenkin-Majestic Paint Corp*, 112 F3d 831,835 (6th Cir 1997) ("The law allows a factfinder to infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proffered reason for the employer's action").

In its response brief, OU also claims that the second notice dated April 6, 2020 was a "tenure denial" notice (Appellee Br, pp 41-42). It was, in fact, a second non-renewal notice, framed by OU's former Provost James Lentini and Academic HR head Joi Cunningham as the BOT's tenure re-review findings due by April 15, 2020 (R 36-2, PageID 468). A reasonable jury could conclude this was done in order to conceal Dean Didion's discriminatory action. Because of their conduct, former Provost James Lentini and Academic HR head Joi Cunningham were named as individual defendants in this litigation. The BOT's tenure re-review findings and decision, which was due by April 15, 2020 required by CBA paragraph 41c(4)(e)(2)c, had not been completed (R 36-2, PageID 468).

The CBA mandates OU's management take appropriate actions before instituting any disciplinary or discharge action against a faculty member (R 36-2, PageID 484). Since there are questions of fact as to whether OU management had sufficiently investigated Dr. Yao's performance to determine whether it was, in fact, deficient, a jury should decide whether Dr. Yao's termination was lawful. Since Dr. Yao has produced some "evidence from which a jury could reasonably doubt the employer's explanation," her prima facia case is "sufficient to support an inference of discrimination at trial." *Chen v Dow Chem. Co,* 580 F3d 394, 400, n 4 (6th Cir 2009).

As further evidence of pretext, OU also falls short in substantiating its claims regarding the provision of proper notices, the opportunity to remedy deficiencies, and framing termination as an inevitable outcome of tenure denial. OU administrators have acknowledged that Dr. Yao consistently received positive evaluations in all three areas of faculty professional responsibilities (Teaching, Scholarship and Service) from both the Dean of the School of Nursing, Judy Didion, and Oakland University since her appointment in the fall of 2015. In light of this, a reasonable jury could conclude that OU's management did not adhere to the faculty performance evaluation process outlined in CBA ¶67, which covers the proper handling of allegations of performance deficit and contract nonrenewal (R 36-2, PageID 484).

### III. Questions of fact remain for Dr. Yao's retaliation claim.

OU does not dispute Dr. Yao engaged in protected activity when she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission in May 2020. OU argues that because it notified Dr. Yao in August 2019 and April 2020 that her employment would end in August 2020, Dr. Yao cannot show that her EEOC charge caused her termination. However, all notices OU referred to pre-dated the alleged final tenure decision.

The EEOC complaint was not untimely because Dean Didion, the primary subject of the EEOC complaint (Appellant's Brief Appx 001-007, Docket 28, Page ID 3-9), never submitted Dr. Yao's promotion with tenure application to OU. OU inaccurately asserted that the tenure review process spans from (b)-(d) to conceal the existence of step (a) (see OU's misrepresented tenure review process table, Docket 32, PageID 28-29). A reasonable jury could view this as retaliation by Dean Didion for placing the two "do not re-employ" recommendations on the BOT's meeting agenda, violating due process mandated by the faculty performance evaluation process outlined in CBA ¶ 67.

OU's alleged "admonition in 2017" regarding Dr. Yao's publication deficiency is clear evidence of OU's misrepresentation of OU's (a)-(d) tenure review process, but also CBA definition (CBA Article I & II) regarding the authority to represent the employer/OU. If it was a foregone conclusion that

11

Dr. Yao's tenure would be denied, then OU may have a point that her EEOC complaint could not have been the cause of her termination.

Having undergone the complete review process and crucial scrutiny from all required review entities twice, along with OU's incorrect description of the formal appeal demanded by the AAUP on behalf of OU's faculty body, a reasonable jury could find that her denial of the re-review, and subsequent termination, was due to her race and protected activity. In fact, Dr. Kauric-Klein's job and tenure was purportedly saved by her appeal to the Provost, a reasonable jury could conclude that Dr. Yao's could have been saved as well but for her race and protected activity.

OU claims Dr. Yao's termination was solely the "inevitable consequence of her tenure denial." But the provision in the CBA that OU uses to support this claim is 38(c) – which seemingly applies to the initial contract for Associate Professors, not Assistant Professors like Dr. Yao (R 36-2, PageID 458).

Accordingly, summary judgment on the retaliation claim should be reversed.

### IV. The interests of justice warrant a remand for, at minimum, further factual development.

OU does not dispute or deny that Dr. Yao would have benefited from representation by counsel during the court proceeding, especially during the discovery and summary judgment phases. OU appears to argue that her pro se

status should not warrant remand because she never asked for "special treatment" at the district court level. Dr. Yao did not, and is not now, asking for special treatment. Her position is that even with the very limited record, she has presented, at minimum, some evidence to support her claims of discrimination and retaliation. If given the opportunity to gather the additional evidence outlined in the original appeal brief, the interests of justice could be better served by remanding this case for further factual proceedings and trial.

## RELIEF REQUESTED

For the reasons set forth herein and the original appeal brief, Plaintiff-Appellant respectfully requests this Court reverse the summary judgment dismissal of this matter and remand for trial. Alternatively, Plaintiff-Appellant respectfully requests this Court remand this matter for further discovery in the interests of justice.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P. C.

By:  /s/Brian J. Farrar
     Brian J. Farrar (P79404)
     Attorney for Plaintiff-Appellant
     33 Bloomfield Hills Pkwy., Ste. 250
     Bloomfield Hills, MI 48304
     (248) 644-1500

**PROOF OF SERVICE**

On November 14, 2023, I filed this document with the Clerk of the Court via the Court's electronic filing system, which will provide notice to all counsel of record.

/s/Brian J. Farrar
Brian J. Farrar (P79404)
Attorney for Plaintiff-Appellant
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
bfarrar@sterlingattorneys.com

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation provided in Fed R App P 32 (a)(7)(B) because it contains 2478 total words in Calisto MT (14 point) proportional type. The word processing software used to prepare this Brief is Microsoft Word 2016.

        Respectfully submitted,

        STERLING ATTORNEYS AT LAW, P. C.

        By:  /s/Brian J. Farrar
              Brian J. Farrar (P79404)
              Attorney for Plaintiff-Appellant
              33 Bloomfield Hills Pkwy., Ste. 250
              Bloomfield Hills, MI 48304
              (248) 644-1500

Dated:  November 14, 2023

# DESIGNATION OF RECORD

| Doc. Entry No. | Description of Doc. | Page ID Range |
|---|---|---|
| | | |
| R 22 | Notice of Self-Representation and Pleadings | 132-138 |
| R 27 | Response to Motion for Sanctions | 21 |
| R 34 | Plaintiff's Motion for Summary Judgment | 370 |
| R 36 | Def's Motion to Dismiss | 431 |
| R 36-2 | Collective Bargaining Agreement | 458, 468, 484 |
| R 36-3 | School of Nursing Tenure Review Statement | 589 |
| R 45-4 | University Personnel Actions | 809 |
| R 47 | Def's Mtn for Dismissal | 816-847 |
| R 47-13 | OU Board of Trustee Minutes, 04/6/2020 | 935 |